UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MORRELL, LLC, | ) | |
|     a Michigan Limited Liability | ) | |
| Company, | ) | |
| | ) | Case No. |
|     Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | Magistrate Judge |
| | ) | |
| RANDALL BOLLIN, | ) | |
|     an individual, and | ) | |
| CLARKE INDUSTRIAL SYSTEMS, | ) | |
| INC. d/b/a IFP AUTOMATION, | ) | |
|     an Indiana Corporation, | ) | |
| | ) | |
|     Defendants. | ) | |

_____

## <u>VERIFIED COMPLAINT</u>

Plaintiff, Morrell, LLC ("Plaintiff" or "Morrell Group"), states for its Verified Complaint against Defendants, Randall Bollin ("Bollin"), and Clarke Industrial Systems, Inc. d/b/a IFP Automation ("IFP Automation") (collectively, "Defendants"), as follows:

## <u>Nature Of The Case</u>

1.     Morrell Group is a leading engineering partner, systems integrator, and value-added distributor of advanced motion control solutions for industrial and mobile applications.  Its experienced application and technical specialists leverage product and industry knowledge to provide innovative solutions for automation,

controls, pneumatic, electrical, hydraulic, and lubrication applications.  Morrell Group has seven locations throughout the Midwest, including in Michigan, Indiana, Ohio, Illinois, and Ontario, Canada.  For more than 40 years, Morrell Group has engineered custom solutions with top industry-leading components.[1]

2.      Morrell Group hired Bollin, who lives in Sylvania, Ohio, in October 2014 and made him a sales engineer, with access to confidential, sensitive and competitive product, sales, engineering, customer/client and prospect information. *See* Exhibit A (Bollin LinkedIn profile).

3.      Bollin resigned  from Morrell Group on June 24, 2022, effective immediately, notifying Morrell Group personnel in-person in the Ft. Wayne, Indiana area.  But he had retained his company-issued laptop back in Sylvania, Ohio, and only returned it to Morrell Group on or after June 27, 2022.

4.      A recent analysis of Bollin's  laptop has revealed that on June 27, 2022, before Bollin returned the laptop to Morrell Group and *after* he resigned, a USB drive was inserted into the laptop and the USB drive contained entire folders named: "Customer history" and "Territory Information by Year."

5.      An identical folder entitled "Customer history" was present on Bollin's laptop and contained 67 specific Morrell Group client folders, by client name, each

---

[1] *See  generally*,  https://morrell-group.com/;  https://morrell-group.com/about-us/ (last visited August 6, 2022).

containing a variety of client-specific product and technical information and/or customer history, and all of which would be highly valuable to a competitor such as IFP Automation. In addition, this folder contained nine other equipment-related documents applicable to Morrell Group clients.

6.     An identical folder "Territory Information by Year" was present on Bollin's laptop and contained eight folders with full customer/client detail in each, covering 2016 to 2022, including folders entitled: "2019 Forecast and Business Plan;" "2020 Forecast and Business Plan;" "2021 Forecast and Business Plan;" and "2022 Forecast and Business Plan." Most of these folders contained numerous multi-tabbed spreadsheets that showed detailed customer/client historical and then-current and projected bookings, and specific targets for each. And the 2022 folder also contained a document named "FY2022 Playbook – Bollin.pdf," which was marked "Strictly Confidential." This document Bollin's specific sales plan and target customer/client plan. These documents are created each year with Morrell Group's management team and each sales person. This one contained the top 16 client prospects for Bollin, and products or lines of business to be sold to each, and which prospects were "targets" and which would be "game changers," along with the probabilities of securing their business.

7.     Moreover, the USB drive also contained files entitled "Randy B Playbook," and another entire folder named for a particular customer/client of

Morrell Group with whom Bollin worked and with whom Morrell Group and IFP Automation are competing for business.

8.     No USB was returned by Bollin upon his separation from employment in June 2022 or thereafter, and he had no business reason to copy or retain these files.

9.     Additional, unknown files are expected to be contained on that USB drive and on or within other devices or accounts that have been in the possession, custody or control of Bollin and/or IFP Automation, and expedited discovery will help show more fully the scope, timing and extent of the data exfiltration.

10.    Bollin signed agreements with Morrell Group protecting confidentiality permanently (with no expiration date) and committing not to compete against Morrell Group by working for a competitor, and committing not to solicit clients of Morrell Group.

11.    Bollin has violated all of these covenants.  In a massive data heist, he took with him a complete customer/client history and literally Morrell Group's playbook, showed up as a *Senior* Sales Engineer at IFP Automation (competing directly against Morrell Group) and has begun actively soliciting clients he served at Morrell Group, in violation of his agreements and applicable law.

Morrell Group with whom Bollin worked and with whom Morrell Group and IFP Automation are competing for business.

8.     No USB was returned by Bollin upon his separation from employment in June 2022 or thereafter, and he had no business reason to copy or retain these files.

9.     Additional, unknown files are expected to be contained on that USB drive and on or within other devices or accounts that have been in the possession, custody or control of Bollin and/or IFP Automation, and expedited discovery will help show more fully the scope, timing and extent of the data exfiltration.

10.    Bollin signed agreements with Morrell Group protecting confidentiality permanently (with no expiration date) and committing not to compete against Morrell Group by working for a competitor, and committing not to solicit clients of Morrell Group.

11.    Bollin has violated all of these covenants.  In a massive data heist, he took with him a complete customer/client history and literally Morrell Group's playbook, showed up as a *Senior* Sales Engineer at IFP Automation (competing directly against Morrell Group) and has begun actively soliciting clients he served at Morrell Group, in violation of his agreements and applicable law.

12.    Morrell Group recently sent cease-and-desist letters to Bollin and IFP Automation, which have gone unheeded.  IFP Automation has doubled-down alongside Bollin, to continue actively to assist Bollin in his improper conduct.

13.    Morrell Group brings this action under the Defend Trade Secrets Act, and applicable state law, including the Michigan Uniform Trade Secrets Act, breach of contract by Bollin, tortious interference with contract by IFP Automation, tortious interference with business relationships and expectancies by Bollin and IFP Automation, conversion, civil conspiracy and aiding and abetting.  Morrell Group seeks immediate, preliminary and permanent injunctive relief that includes a return of all property and files taken by Defendants; and Morrell Group seeks damages, including, but not limited to, exemplary and punitive damages, compensation for all losses of any sort incurred and that have been and will be incurred by Defendants' conduct, and Morrell Group's attorney fees, expenses and costs in having to investigate, pursue and remedy Defendants' conduct and in conducting this litigation.

## Parties

14.    Plaintiff Morrell Group is a Michigan limited liability company, with its main office for business in Oakland County, Michigan, at 3333 Bald Mountain Road, Auburn Hills, MI 48326.  Morrell  Group conducts business in the Eastern District of Michigan.

15.     Bollin is a resident of Lucas County, Ohio, domiciled at 7815 Hedingham Road, Sylvania, OH 43560.  Bollin conducted work duties at all relevant times, and consented to venue, within this judicial district, and the acts or omissions of Bollin occurred or had their effects, in whole or in part, in this judicial district.

16.     Clarke Industrial Systems, Inc., also known as IFP Automation, is an Indiana for-profit corporation that is privately held and has its principal office(s) at 3911 Merchant Road, Ft. Wayne, Indiana 46818.

## Jurisdiction and Venue

17.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and applicable law, as this is a civil action arising under the laws of the United States for injunctive relief and damages as a result of Defendants' violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq*.

18.     This Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and applicable law, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States:

a.     Morrell Group is a citizen of Michigan, which is the location of its principal office and its members.  None of its members are citizens of Ohio or Indiana.

b.     Bollin is a citizen of Ohio because he is domiciled in the state of Ohio having both a physical presence and intent to remain indefinitely in Ohio.

c.     IFP Automation is a citizen of Indiana, which is IFP Automation's state of incorporation and the location of its principal office(s).

19.    This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a) and applicable law, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

20.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), in that Bollin consented to venue in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## **Background Facts**

*Morrell Group Has Taken And Takes Significant Measures To Protect Its Confidential, Proprietary and Trade Secret Information*

21.    Morrell Group has spent years investing greatly in the development of its business, and takes significant measures to protect the confidentiality of its information.

22.     Morrell Group's confidential information includes, but is not limited to, financial information, marketing information, customer/client sales information, customer/client prospect targets, marketing assessments, sales plans, studies, product and equipment data sheets, strategic plans, internal organizational data, monetary and industry targets, contracts and contractual terms, pricing and sales information and data, and employee and compensation data.

23.     Morrell Group also promises its customers/clients to maintain confidentiality of their business information.

24.     Among its numerous policies in the area of confidentiality, Morrell Group has a cybersecurity policy covering risk-based security along numerous platforms run by IT professionals.

25.     Morrell Group limits access to customer/client data and other sensitive and proprietary material. Morrell Group maintains security controls in areas of authentication, gateways, network restrictions, and firewall protection, as it relates to protecting its information.

26.     At all relevant times, Morrell Group also operated and managed all necessary infrastructure to support its internal-facing systems, and continues to do so.

27.     At all relevant times, Morrell Group consistently monitored and sought to improve security, reliability, availability, and integrity of Morrell Group systems, and continues to do so.

28.     At all relevant times, Morrell Group's deployed technologies have included targeted threat protection, attachment protection, impersonation protection, data encryption, single sign-on, two-factor authentication, next-generation firewalls, advanced endpoint protection, and geo-redundant infrastructure; and this remains the case.

29.     At all relevant times, Morrell Group has had one or more policies in place to enforce best-practices and technical controls in areas of authentication, access control, gateways, network restrictions, and cryptography as it relates to protecting Morrell Group's information.

30.     At all relevant times, Morrell Group also prevented, and continues to prevent, transfer of data to unsanctioned cloud-based file storage services, such as DropBox, Google Drive, or Box.

31.     Additionally, Morrell Group controls the ability to print remotely and monitors all printing activity from its systems.

32.     At all relevant times, employees and independent contractors also underwent regular phishing simulations, and this remains the case.

33.     At all relevant times, Morrell Group monitors network activity globally and alerts Morrell Group of any perceived threats, internal or external, and this remains the case.

34.     At all relevant times, Morrell Group also underwent regular vulnerability scans and penetration tests as well as internal vulnerability scans, and this remains the case.

35.     At all relevant times, Morrell Group regularly conducted risk assessments to identify areas of exposure and identify solutions to mitigate, and this remains the case.

***Morrell Group Hires Bollin***

36.     Bollin began at-will employment with Morrell Group, then known as Morrell Incorporated, on or about October 13, 2014.

37.     In connection with his hire and onboarding, Bollin executed an executed a Confidentially and Work Product Agreement ("Confidentiality Agreement"), an Employee Nondisclosure Agreement ("Nondisclosure Agreement"), and  a Non-Competition and Non-Solicitation Agreement (the "Non-Compete Agreement").

38.     In his Confidentiality Agreement, Bollin agreed, among other things:

3.  I agree that Confidential Information is valuable, secret, confidential and propriety to the Morrell Companies. I will not, at any time (whether during or after the termination of my employment for any reason, whether voluntary or involuntary), or for any purpose, other than for my obligations to Morrell, make public, disclose, furnish, release, sell or otherwise make available to any individual or entity any Confidential Information or otherwise use any Confidential Information or allow any Confidential Information to be used for any purpose, including but not limited to contacting for any purpose the personnel, customers, potential customers, suppliers or vendors of the Morrell Companies unless and until such information becomes generally available to the public through no fault of mine or unless such disclosure or use is authorized in writing in advance by Morrell.

7.  I further agree that all Confidential Information shall be and remain the sole and exclusive property of the Morrell Companies and that immediately upon the termination of my employment for any reason, whether voluntary or involuntary, I will deliver to Morrell, without making or retaining any copies, any and all drawings, writings, prints, documents, listings, spreadsheets, computer programs, computer files stored on personal computers or media storage devices, or anything containing any Confidential Information unless authorized in writing by Morrell to retain any such materials.

*See* Exhibit B hereto (Confidentiality Agreement), at ¶¶ 2, 3 and 7.

39.     In the event of his taking and retention of such information Bollin

agreed to immediate injunctive relief, without bond or advance notice to him:

14. I agree that any breach or threatened breach of this Agreement by me could cause significant and continuing injury to the Morrell Companies, the monetary value of which could be impossible to establish. In the event of my breach or threatened breach of any term of this Agreement, the Morrell Companies shall have, in addition to all remedies of law, the right to equitable relief without the necessity of posting bond or other security or proving actual losses. To the extent permissible under applicable law, a temporary restraining order shall be granted immediately on commencement of any such suit. I waive any right to notice of any application for such an order.

*See* Exhibit B hereto (Confidentiality Agreement), at ¶ 14.

40.     In his Nondisclosure Agreement, Bollin agreed, among other things:

I agree that I will not, during or after my employment, discuss with or disclose (other than in performing my duties as an employee of Morrell Incorporated) any information, knowledge, data, or property I have obtained or developed as an employee concerning Morrell Incorporated business or relating to other companies to which Morrell Incorporated has promised confidentiality.  I also agree that all analyses, ideas, charts, drawings, reports and other documents prepared by me or in conjunction with others, in the course of my employment, shall be the property of Morrell Incorporated, and that I will not make or permit anyone else to make any copy, abstract, or summary thereof.  Upon termination of my employment, I will return Morrell Incorporated all such documents.

*See* Exhibit C hereto (Nondisclosure Agreement).

41.     In paragraph 5 of the Non-Compete Agreement, Bollin also agreed he would not work for any of Morrell's competitors or vendors during his employment and for a year afterwards, as follows:

> During the term of my employment with Morrell and for a period of **one (1) year after** the termination thereof (whether voluntary or involuntary), I will not directly or indirectly as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, agent, consultant, or any other capacity whatsoever (other than as the holder of not more than three (3%) percent of the total outstand stock of a publicly held company) or by means of any corporate or other device, **perform the same or similar duties** and capacities of my employment for which I am/was employed by Morrell to any individual or entity that is/was a Client or engaged in the Restricted Business **anywhere in Michigan, Indiana, Ohio**, or Illinois or the province of Ontario.

*See* Exhibit D ("Non-Compete Agreement"), at ¶ 5 (emphases added).

42.     Bollin agreed "Restricted Business" is defined as "the business of selling, distributing and manufacturing motion control products," and Bollin knows that both Morrell Group and IFP Automation are in this business.  *See* Exhibit D ("Non-Compete Agreement"), at ¶ 3.

43.     In paragraph 6 of the Non-Compete Agreement, Bollin agreed he would not contact any client or competitor of Morrell during his employment and for a year afterwards, as follows:

> During the term of my employment with Morrell and for a period of **one (1) year after** the termination thereof (whether voluntary or involuntary), I will not directly or indirectly as an . . . employee . . . or any other capacity whatsoever . . . **contact any Client or competitor** of the Morrell Companies for the purposes of diverting, taking away, offering, selling or soliciting the Restricted Business.

*See* Exhibit D ("Non-Compete Agreement"), at ¶ 6 (emphases added).

44.     Bollin agreed a "Client" included both customers and prospects:

4.   For the purposes of this Agreement, "Client" includes those individuals or organizations for which the Morrell Companies have provided products or services during my employment with Morrell or, any person or entity for which I participated in a proposal or discussion to provide goods or services or other persons with a business relationship with the Morrell Companies in the 24 months preceding my termination of employment with Morrell (whether voluntary or involuntary)

*See* Exhibit D ("Non-Compete Agreement"), at ¶ 4.

45.     In the event of his breach or threatened breach of the Non-Compete Agreement, Bollin agreed to immediate injunctive relief, without bond or advance notice to him.  *See id*., at ¶ 9.

46.     In 2020, several months after the onset of the COVID pandemic, Bollin was placed on a short furlough (leave) beginning July 17, 2020, with his benefits still fully paid just as they had been while active, and with him being paid commissions by Morrell Group during that time, through August 31, 2020.

47.     Moreover, during this brief furlough Morrell Group paid Bollin a quarterly bonus, which to have received it under his October 13, 2014 Offer Letter, Bollin would have to have been employed by Morrell Group on the date the payment was made.

48.     Bollin was never fully separated from employment, and was asked to come back to work effective September 8, 2020, and did so.  Bollin continued to work for Morrell Group in the same position of sales engineer, and at the same base salary and same benefits.

***Facing Possible Discipline For Poor Performance, In May and June 2022, Bollin Finds A New Job, Resigns From Morrell Group and Raids Morrell Group Documents And Data***

49.     By the Spring of 2022, Bollin was facing potential correction or discipline in his employment at Morrell Group due to his own poor performance.

50.     In or around May 2022, upon information and belief, Bollin found or was close to finding other employment with IFP Automation, but continued to work for Morrell Group.

51.     On June 24, 2022, Bollin resigned from employment with Morrell Group effective that day, but failed to return his laptop until after he had transferred the above-referenced host of customer/client documents onto a USB drive, which Bollin last connected to his Morrell Group laptop on June 27, 2022.

52.     Subject to further investigation, it appears likely Bollin engaged in other forms of data theft/exfiltration.

53.     Bollin spent nearly eight years employed with Morrell Group. *See*, *e.g.*, Exhibit A (Oct. 2014 forward).

54.     Upon information and belief, Bollin began working for IFP Automation in early July 2022 as a senior sales engineer.

55.     By late July 2022, upon information and belief, Bollin had already visited at least three clients/customers of Morrell Group, in his capacity as a senior sales engineer with IFP Automation, and with the host of confidential information and trade secrets belonging to Morrell Group still in his possession, custody and/or control.

56.     Despite puffery by counsel for IFP Automation in response to a July 1, 2022 cease-and-desist letter, perhaps sensing a problem, Greg Ensign, IFP

Automation's Director of Sales, recently reached out to Morrell Group, to see if something could be "worked out" regarding Bollin.

57.    In early August 2022, initial forensic analysis obtained by Morrell Group revealed the data exfiltration done at the hands of Bollin was extensive in both breadth and depth, and shocking in its brashness.

58.    Upon information and belief, Bollin and IFP Automation have been using and are continuing to use and disclose trade secrets, confidential and proprietary information, including, but not limited to, the documents, files and information taken from Morrell Group and otherwise held by one or both Defendants, and also including, but not limited to, Bollin's insider and specific knowledge of customer/client contacts, needs, histories, and pricing and cost information, in an attempt by Defendants to solicit customers/clients away from Morrell Group.

59.    Upon information and belief, Bollin and IFP Automation are setting their sights not on merely the general population of clients/customers in the marketplace, but specifically on all Morrell Group clients/customers and prospects with whom Bollin worked (at a minimum) and/or whom Bollin or Morrell Group was recently targeting, using confidential and trade secret information belonging to Morrell Group, in total violation of Bollin's obligations to Morrell Group and in total violation of Defendants' obligations and prohibitions under applicable law.

60.     Unless Defendants are immediately and fully restrained and ordered to return all Morrell Group data and documents in all forms, including all iterations of same, and barred from further use or disclosure, Morrell Group faces an imminent, irreparable and extensive threat to its business.

**Causes of Action**

**COUNT I –**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016,**
**18 U.S.C. §§ 1836, *et seq*.**
**(All Defendants)**

61.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62.     Morrell Group owns and possesses certain confidential, proprietary and trade secret information, as alleged above.  This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.  Morrell Group has seven locations throughout the Midwest, including in Michigan, Indiana, Ohio, Illinois, and Ontario, Canada, serving clients/customers with custom solutions and products formed from industry-leading components; and services involve real-time managed inventory, quick ship programs, and 24/7 customer support, coupled with engineering, prototyping, sizing, print review, and turnkey solutions.   Morrell Group's products, vendors and

17

affiliated entities combined cover clients/customers, products and services in numerous additional states beyond Morrell Group's locations.

63.     Morrell Group derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means.  Morrell Group has taken, and continues to take, reasonable measures to keep that information secret and confidential.

64.     Without Morrell Group's consent, Bollin, and upon information and belief IFP Automation, misappropriated the confidential, proprietary, and trade secret information in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

65.     The improper means used by Defendants to acquire and disclose Morrell Group's trade secrets include, among other things:

> a.   Breaching and inducing breaches of specific provisions of Morrell Group's agreements with Bollin;
>
> b.   Bollin traveling to Indiana to resign, but leaving his laptop in Ohio, and waiting to return it until after he had transferred entire folders of critical and extensive client/customer and prospect

18

information, sales histories and targets, client/customer and prospect contact information, assessments of needs, and pricing information; and

c. In communications via counsel, Defendants attempting to downplay, distract from or ignore the clear breaches and violations outlined herein.

66.    As a direct result of Defendants' conduct, Morrell Group has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

67.    Defendants' conduct entitles Morrell Group to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

68.    Morrell Group requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Bollin's computers, mobile devices, personal USB and electronic storage devices, email accounts, "cloud"-based storage accounts, and mobile device call and message history, to determine the extent to which Morrell Group's trade secrets were wrongfully taken and/or disseminated to others.

69.    Defendants' misappropriation and disclosure of Morrell Group's trade secrets entitles Morrell Group to monetary damages, fees, expenses and costs, as provided in 18 U.S.C. § 1836(b)(3)(B).  Morrell Group is also entitled to recover for Defendants' unjust enrichment.

70.     Defendants' misappropriation of Morrell Group's trade secrets was willful and malicious and was undertaken for the purpose of harming Morrell Group. Morrell Group therefore seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

**COUNT II –**
**VIOLATION OF THE MICHIGAN**
**UNIFORM TRADE SECRETS ACT,**
**MICH. COMP. LAWS ANN. §§ 445.1901, *et seq.***
**(All Defendants)**

71.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     Upon information and belief, Defendants disclosed or used Morrell Group's confidential, proprietary, and trade secret information without the express or implied consent of Morrell Group, and they knowingly used improper means to acquire that confidential, proprietary, and trade secret information.

73.     Such confidential, proprietary, and trade secret information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use.  As such, Morrell Group takes reasonable efforts to guard against such disclosures and to maintain the secrecy of its confidential, proprietary, and trade secret information.

74.    The continued misuse and possession of Morrell Group's property by Defendants was and is unauthorized and unlawful.

75.    Defendants' possession and misuse of Morrell Group's property has resulted in an inequity.

76.    This conduct constitutes both the actual and threatened use and/or disclosure of trade secrets belonging to Morrell Group.

77.    Morrell Group has no adequate remedy at law for Defendants' actions because the damages Morrell Group has suffered and will continue to suffer in connection with the disclosure and use of its confidential information and trade secrets described herein and the use and disclosure of its property threaten damage to Morrell Group's goodwill, customer base, and business reputation, which damages are incapable of exact proof.

78.    Defendants will, unless restrained preliminarily and permanently, continue to use and disclose Morrell Group's confidential, proprietary, and trade secret information.

79.    Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants and those acting in concert with them or on their behalf from continuing this unlawful conduct and enjoining them from engaging in further actual or threatened acts of misappropriation is required to provide Morrell Group meaningful relief.

80.     Due to Defendants' use and disclosure of Morrell Group's trade secrets, Morrell Group has sustained damage and further seeks an award of its reasonable and necessary attorneys' fees, expenses and costs.

## COUNT III –
## BREACH OF CONTRACT
**(Confidentiality Agreement and Nondisclosure Agreement)**
**(Bollin Only)**

81.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

82.     Pursuant to the Confidentiality and Nondisclosure Agreements, Bollin agreed not to take, retain, use or disclose client/customer and other documents, information or data of Morrell Group, as stated therein.

83.     By virtue of his conduct described above and other conduct, Bollin has materially breached the terms of the Confidentiality and Nondisclosure Agreements.

84.     As a direct and proximate result of Bollin's conduct, Morrell Group has sustained monetary damages in an amount to be determined by a trier of fact and including, but not limited to, lost business, fees and expenses to pursue Defendants, as well as an irreparable and imminent further loss of goodwill, client relationships, strategic advantage, and potential future business.

## COUNT IV –
## BREACH OF CONTRACT
### (Non-Compete Agreement)

85.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86.     Pursuant to the Non-Compete Agreement, Bollin agreed not to become employed with a competitor to Morrell Group such as IFP Automation while employed with Morrell Group and for one year thereafter, as stated therein.

87.     Pursuant to the Non-Compete Agreement, Bollin agreed not to contact or solicit competitors, clients/customers/prospects of Morrell Group while employed with Morrell Group and for one year thereafter, as stated therein.

88.     By virtue of his conduct described above and other conduct, Bollin has materially breached the terms of the Non-Compete Agreement.

89.     As a direct and proximate result of Bollin's conduct, Morrell Group has sustained monetary damages in an amount to be determined by a trier of fact and including, but not limited to, lost business, fees and expenses to pursue Defendants, as well as an irreparable and imminent further loss of goodwill, client relationships, strategic advantage, and potential future business.

## COUNT V –
## TORTIOUS INTERFERENCE WITH CONTRACT
## OR CONTRACTUAL RELATIONS
### (IFP Automation Only)

90.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     Morrell Group's Agreements with Bollin are valid contracts.

92.     These contracts have been breached by Bollin.

93.     Upon information and belief, IFP Automation unjustifiably instigated the breach(es) by encouraging and/or assisting Bollin or otherwise.

94.     As a result of IFP Automation's unjustifiable instigations of the breaches and related conduct, Morrell Group has suffered and will continue to suffer damages.

## COUNT VI –
## TORTIOUS INTERFERENCE WITH BUSINESS
## RELATIONSHIPS OR EXPECTANCIES
### (All Defendants)

95.     Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

96.     Morrell Group enjoyed business relationships and/or expectancies of business relationships with certain clients/customers and potential clients/customers, including clients/customers with whom Defendants are now doing business and/or soliciting to do business.

97.     Defendants knew and were aware of these business relationships and/or expectancies.

98.     The business relationships and expectancies describe above had an actual economic benefit and/or likelihood of economic benefit to Morrell Group.

99.     Defendants knowingly and intentionally used the trade secrets and confidential information to induce Morrell Group's clients and potential clients to do business with Defendants when Morrell Group validly expected those clients and potential clients to do (and/or continue to do) business with Morrell Group.

100.    The aforesaid acts were inherently wrongful and could not be justified under any circumstances.

101.    Defendants' actions have resulted in damages to Morrell Group in the form of disruption of the business relationships, and expectancies, between Morrell Group and its clients and potential clients.

**COUNT VII –**
**CONVERSION**
**(STATUTORY – MICH. COMP LAWS ANN § 600.2919(A) –**
**AND COMMON LAW CONVERSION)**
**(All Defendants)**

102.    Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

103.   Upon information and belief, Defendants wrongfully asserted control over and obtained Morrell Group's files, documents and the information and data contained therein.

104.   Such conduct was willful and knowing.

105.   Upon information and belief, such conduct was done for Defendants' own use and possibly for the use of their affiliates and/or others.

106.   Morrell Group has been damaged by this conduct, and is entitled to an award of actual damages and treble damages, plus its attorney fees and costs.

107.   Preliminary and permanent injunctive relief is required for the return of all files, information, data and property converted by Defendants, and to prevent further misuse or disclosure of the data and property, and no adequate remedy exists at law for complete relief absent such injunctive relief.

### COUNT VIII –
### AIDING AND ABETTING
### (All Defendants)

108.   Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

109.   Defendants' actions independently establish the wrongs complained of herein.

110.   Upon information and belief, each Defendant knew of the wrongs committed by the other Defendant.

111. Upon information and belief, each Defendant provided substantial assistance to the other Defendant to effect the wrongs committed by each of the Defendants.

112. Upon information and belief, Defendants acted together, in concert, or at the direction of each other, to wrong Morrell Group.

113. Upon information and belief, Defendants knowingly aided and abetted one another in the misconduct and unlawful conduct outlined above.

114. As such, Defendants are jointly and severally responsible for each and every wrong committed.

115. Morrell Group has been damaged by this conduct, and is entitled to an award of actual damages and treble damages, plus its attorney fees and costs.

**COUNT IX –**
**CIVIL CONSPIRACY**
**(All Defendants)**

116. Morrell Group realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

117. Upon information and belief, Defendants have been, and are, engaged in a concerted action to divert, use and disclose Morrell Group's confidential, proprietary and trade secret information, and to violate Bollin's contracts and other duties owed to Morrell Group and intentionally and wrongfully continuing to

27

exercise control over Morrell Group property and clients and seeking improperly to cover their tracks, and are causing damage to Morrell Group.

118.   Morrell Group has no adequate remedy at law for Defendants' conspiracy because the damages Morrell Group has suffered and will continue to suffer in connection with the above loss of clients and misuse and wrongful disclosure of Morrell Group's confidential, proprietary and trade secret information are incapable of exact proof.

119.   Defendants, unless restrained, will continue to conspire to damage Morrell Group through the use and disclosure of Morrell Group's confidential, proprietary and trade secret information and other misconduct.

120.   Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants from continuing to conspire, is needed to provide Morrell Group meaningful relief.

121.   Due to the misuse of confidential, proprietary and trade secret information, breaches of contractual and other duties owed and other unlawful conduct Defendants have conspired to commit, Morrell Group has suffered and continues to suffer damages.

## **RELIEF REQUESTED**

WHEREFORE, Morrell Group respectfully requests the following relief:

a)      A temporary restraining order and preliminary injunction providing the securing and return of all tangible materials, whether electronic or hard copy, that were obtained from and/or belong to Morrell Group (and/or its affiliates) that have been or remain in Bollin's and/or IFP Automation's possession, custody or control, including, but not limited to, Morrell Group's confidential, proprietary and trade secret information;

b)      A temporary restraining order and preliminary injunction preventing Bollin from violating his various confidentiality obligations;

c)      Expedited discovery to provide Morrell Group with immediate information on the more precise nature, extent and breadth of the breaches and other unlawful conduct committed by Bollin and IFP Automation and anyone else acting in concert with them or on their behalf;

d)      A full analysis of the files and clients taken by Defendants, and the remediation, purging and/or return of files; and Court-enforced assurances regarding same;

e)      An order mandating specific performance of Bollin's restrictive covenants;

f)      Enter a judgment against Defendants for actual, treble, exemplary, and punitive damages in an amount to be determined at the time of trial, in excess of $75,000.00;

g)      Interest and costs;

h)      Along with final disposition of this matter, a permanent injunction against Defendants to the same or greater effect as the temporary restraining order(s) and preliminary injunction(s) sought herein;

i)      An award of Morrell Group's attorneys' fees and expenses; and

j)      Other relief the Court and/or trier of fact deems just and proper.

## **JURY DEMAND**

Plaintiff Morrell Group hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

CLARK HILL PLC

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
Vincent C. Sallan (P79888)
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI  48226
(313) 309-4269/ (313) 965-8300
pwilhelm@clarkhill.com
vsallan@clarkhill.com

Date:  August 9, 2022

*Attorneys for Plaintiff*

## **<u>VERIFICATION</u>**

I, Mark Garrett, pursuant to 28 U.S. C. § 1746, declare as follows:

I, Mark Garrett, President with Morrell Group and authorized representative of Plaintiff, Morrell, LLC, state that I have read and made this Verified Complaint and attest that those facts stated of my own knowledge are true to the best of my knowledge, information and belief and those matters stated of which I have been informed I believe to be true after reasonable inquiry, to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2022 in Auburn Hills, Michigan.

_____
Mark Garrett

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2022, I electronically filed the foregoing paper using the Court's ECF system, which will send notification of such filing to all counsel of record.

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
Clark Hill PLC

268124747.v3